MECHANICS' SAVINGS BANK *v.* JEREMIAH T. FARGASON ET AL.

1. PARTNERSHIP. *Insolvency. Creditors. Distribution of assets.*

In winding up the business of an insolvent copartnership, firm creditors should be given firm assets, and individual creditors the separate assets of the partner who is their debtor; and the equities of such a distribution cannot be defeated by the acts of the partners.

2. SAME. *Individual creditor paid with firm assets. Ratification.*

A creditor of a partner, having knowledge of the facts, who is paid with the funds of the copartnership, the payment not being accepted in good faith in due course of business, is liable to account therefor to the firm creditors; and the ratification of such a payment by the other partners does not preclude firm creditors from enforcing the liability.

3. SAME. *Deed of trust by partner on firm property.*

    A deed of trust executed by a partner on his interest in firm property, to indemnify a surety on his individual obligation, binds only his interest remaining after firm creditors are paid.

FROM the chancery court, second district, of Yalobusha county.

HON. JAMES C. LONGSTREET, Chancellor.

Fargason and others, appellees, were complainants in the court below; the Merchants' Savings Bank, appellant, was defendant there. The facts are fully and clearly stated in the opinion of Chancellor Longstreet, which is reported in full by order of the supreme court. It is as follows:

*Opinion of the Chancellor.*—"Duke & Harman, a partnership engaged in trade, sold the entire stock of merchandise and the fixtures belonging to the firm for $900. The purchaser gave, in payment, his check for that amount, and this check was handed by one partner, Harman, to the other, Duke, with directions to deposit same in Mechanics' Savings Bank, for the purpose of paying the debts of the firm. The firm of Duke & Harman, as a partnership, was insolvent at the time of such sale, and the closing out of its assets ended its business and practically dissolved the partnership. The fact that the check for $900 represented the proceeds of the entire assets of the firm, with the exception of certain accounts and claims, was known to the bank. The firm of Duke & Harman, prior to such sale, had transacted its banking business with said Mechanics' Savings Bank, and the bank was familiar with the affairs of such partnership.

"Some months prior to such sale of assets and suspension of business by said firm, it had become indebted to said bank to a considerable amount, on account of overdrafts on its deposit account. In order to repay this overdraft, Harman testifies he paid to said bank, individually, the sum of $500. The other partner, Duke, in order to raise his proportional part, borrowed from said Mechanics' Savings Bank the sum of $500, and gave

therefor his note, with one Mrs. M. E. Duke as his surety thereon. In the attempt to indemnify said Mrs. M. E. Duke against loss on said note, the partner, Duke, executed to her a deed of trust, conveying, for her security, his undivided interest in the fixtures and stock of merchandise of Duke & Harman. This instrument was duly recorded. On the day following the sale by Duke & Harman of its goods and fixtures, said Mrs. Duke employed J. G. McGowen, Esq., as her attorney, to protect her interests. The partner, Duke, thereupon gave to said attorney a check for $450, signed in the firm's name, drawn on the $900 deposit at the Mechanics' Savings Bank, and this check the said attorney carried to said bank, and delivered it to same, with instructions to apply same as a credit on the individual note of the partner, Duke, for $500, and on which said Mrs. M. E. Duke was surety. This was accordingly done by the bank. As to these recited facts there is no particular difference between the parties, except that the bank contends that at the time of the overdrafts the firm owed said bank only about $680, and that the whole of the $1,000 raised by the partners was not used to liquidate a balance due the bank larger than the amount named.

"The bill is to subject the said sum of $450 paid by the partner, Duke, through Mrs. M. E. Duke, on his individual note, to the demands of firm creditors.

"From the time of *Stegall* v. *Coney*, 49 Miss., 761, down to *Bank* v. *Durfey*, 72 Miss., 971 (s. c. 18 So. Rep., 456; 31 L. R. A., 470), it is asserted that, in the settlement of the affairs of an insolvent partnership, firm assets should be given to firm creditors, and individual assets to individual creditors. In *Schmidlapp* v. *Currie*, 55 Miss., 597, and *Bank* v. *Klien*, 64 Miss., 141 (s. c. 8 So. Rep., 208), it was practically announced that the principle was only a rule of administration of assets when made in the courts, and that its operation could be avoided by the acts of the partners. But in the Durfey case the court restored the principle to its pristine virtue, and,

indeed, extended its force and operation, by virtually declaring an inhibitition against the change in the operation of the rule by the acts of insolvent partnerships to the injury of firm creditors. This sound and equitable principle, which the chancellor conceives is clearly and unequivocally enunciated by our supreme court in *Bank* v. *Durfey*, will be enforced in all its completeness by this court until the supreme court shall see fit to modify its utterances.

" It is urged by counsel for defendant, however, that, even if the rule be conceded, the facts of the case do not warrant its application here. It is contended, first, that Mrs. M. E. Duke had a right to the check representing one-half the proceeds of the sale, because of the trust deed executed to her by Duke. It will suffice to say that the instrument conveyed no greater interest in the assets of the firm than the partner, Duke, possessed, subject to a settlement of its affairs with creditors and with the partner, Harman. The deed of trust was merely a contract of indemnity executed by an individual partner, and bound only his individual interest. He would have had no individual interest unless, after settlement, there should have been a surplus over the just demands of the partner, Harman, and of creditors of the firm. Under the circumstances, where the insolvency of the firm at the time is admitted, when the check for $450 was given, in the firm name, by the partner, Duke, to the attorney of Mrs. Duke, his surety, to be given to the bank in part satisfaction of the bank's demand against Duke, the transaction is, to all intents and purposes, the same as if the partner, Duke, had himself drawn the check to the bank and directed it upon his individual debt.

" It is further contended that the bank is not liable to account, because the check which it accepted and credited on its demand against Duke, and drawn by one authorized to draw it, was drawn on a proper fund, and was accepted and paid by the bank in good faith and in due course of business. If the evidence sustained this broad statement,

the bank would not be liable. Had the check been drawn by
Duke, payable to a stranger, in a matter with which the bank
was unconnected, and in which it had no interest, then it would
be protected. But the chancellor cannot escape the conviction,
arising out of the evidence, that the bank and its agents had
knowledge of, and were familiar with, all the circumstances of
the transaction from inception to conclusion. It knew the
affairs and the financial condition of the firm; it knew that the
firm had been in financial distress, and had sometimes before
been forced outside of partnership resources to pay a heavy
overdraft to the bank itself; it knew where and how the $500
was borrowed by Duke, and that it was used in great part, if
not wholly, to pay his part of debit balances; it knew that the
check was drawn by the partner Duke to be paid on his indi-
vidual debt, and out of partnership funds; and it accepted the
check and credited it for the bank's advantage on the note of an
insolvent principal, on which Mrs. Duke was only surety. The
bank made the loan to Duke, and in the course of business knew
that Mrs. Duke was his surety. The chancellor cannot presume,
in order to concede the argument for the bank, that its agents
were bereft of sight, hearing, intelligence and memory. The
decision in *Eyrich* v. *Bank*, 67 Miss., 60, s. c. 6 So. Rep., 615,
relied on by counsel for the bank, is clear authority for the
conclusions announced above, and is not an authority in the
bank's favor.

"Again, it is contended that, if there was wrong by Duke
and the bank in the misapplication of the partnership assets,
recovery cannot now be had, because Harman, the remaining
partner, afterwards consented to and ratified the application in
consideration of the transfer to him by Duke of the latter's
interest in the notes and accounts of the firm. In support of
this contention, a written assignment of the claims is offered
and relied on, and proof is offered of a prior verbal agreement
to the same effect. The written assignment evidences nothing
beyond formal transfer, under this agreement, as it is termed,

and the partner Harman took no greater right or interest than he had prior to its execution.   A partner has a general right and authority to collect debts due to his firm, and apply the collections to the payment of debts due from the partnership. This is his right and duty under the law.   The writing offered in evidence expresses the purpose and the consideration of its execution.   There might be cases where such a transfer would constitute a new consideration, but in this case the assets assigned were less in collectible value than the amount of debts charged against them.   Even had Harman expressly ratified such transfer, he could have only concluded himself, not creditors, with present rights.   It is shown that some of complainants have been paid off since the filing of the bill herein, and that probably others have received credits and partial payments on their demands.

"An accounting and establishment of claims will be necessary, and, to that end, an accounting before the clerk and master, with leave to all parties to appear and contest claims, will be necessary, and is ordered.   The Mechanics' Savings Bank will pay the said sum of $450, with six per cent. interest per annum from date of reception, into court to abide final decree; or the decree may provide for execution of bond by said bank, with sureties conditioned to have said fund forthcoming at final decree, or to satisfy the decree of the court.   Solicitors may prepare a decree in accordance with the views hereinabove expressed.            J. C. LONGSTREET, Chancellor."

There was a decree in accordance with the opinion of the chancellor, and from this decree defendant appealed to the supreme court.

*Kimmons & Kimmons*, for appellant.

If commercial paper of a partnership be taken for value in due course of business without actual notice, the partnership is bound although it was issued without authority of all the part-

ners. Suspicious circumstances do not constitute notice. If not taken in bad faith the holding is *bona fide* and the firm bound. *Eyrich* v. *Bank*, 67 Miss., 60; *Sylverstein* v. *Atkinson*, 45 Miss., 81; *Swift* v. *Smith*, 102 U. S., 442; *Sweetzer* v. *Bank*, 73 Miss., 96; Am. & Eng. Enc. of L., 2d ed., vol. 4, pp. 176, 177; *Bank* v. *Everman*, 52 Miss., 500; *Chapman* v. *Rose*, 15 Am. Rep., 401; *National Bank* v. *Morgan*, 44 Am. St. Rep., 652; *Cheever* v. *Railroad Co.*, 55 Am. St. Rep. 646.

It is not the duty of a bank when commercial paper is presented to look further than the face of the paper itself, and circumstances which would put an ordinarily prudent man on guard are not sufficient to cause a bank to refuse to pay a check. In the Sweetzer case above cited, the paper was payable to the drawer and was accepted by the drawee, within whose course of business it was to issue negotiable paper, but the paper remained in the hands of the drawer, but was used for his benefit, and the court held there was nothing on the face of the paper to indicate a want of good faith and that the bank was protected in its holding. In the case of *Cheever* v. *Railroad Co.*, above cited, two notes were executed by the president of the railroad company, he signing the name of the company by himself, they were payable to John T. Brewing, who indorsed the paper in blank, and the president took the paper and indorsed the name of his firm on it and transferred it to the plaintiff; the court held that the paper itself was regular, and that the holder knew nothing of the facts, and had a right to rely on its face and it protected him against loss.

It is urged that the check for $450, payable to Mrs. Duke, or bearer, was applied to the note of Mr. Duke. This is true, but Mrs. Duke was also principal on that note, and the check was paid thereon, not by Mr. Duke but by Mrs. Duke. The bank had a right to presume, and it was its duty to presume, that this check was given to Mrs. Duke for a lawful purpose and for a consideration passing from her to the firm and that

her title to this paper was perfect, and if she desired to place it to credit on her note at the bank, she·had a perfect right to do so.    She was as much bound by this note to pay the bank $500 as was A. R. L. Duke.    It would indeed be a pessimistic view to take of human nature to say that we, in our dealings with our fellow man, must look with suspicion on every act of theirs until we had fully investigated it for·ourselves.    The settlement of an existing debt is a valuable consideration and will support the transfer to the bank in this·case.    *Sweetzer* v. *Bank*, above cited.    The bank therefore paid value for the check given it by Mrs. Duke, for Blackmur, its president, tells us in his testimony that before he had any notice whatever that there was any trouble about this matter, the balance due on the note was paid and the note taken up by the makers.    The relinquishment of a debt makes one a purchaser for value.    *Hinds* v. *Pugh*, 48 Miss., 268; *Newell* v. *Crider*, 50 Miss., 539.

Even though this court should hold that the appellant is liable on account of the misapplication of the check, yet Harman ratified the action of Duke in drawing the check, for on or about the third day after the transaction complained of took place, Duke transferred his interest in the books and claims due the firm to Harmon, and surrendered all right to collect any sum due the firm in any manner whatever.    There is considerable conflict of testimony on this point, and the court below did not decide the question in so many words, but treated the matter as though the question of fact were decided in favor of appellant, and says that conceding there was a ratification by Harman, that it could not affect the rights of these creditors, the appellees.    In this we fail to see the force of the chancellor's reasoning, and we do not think he is supported by the authorities on that question.    Let us take the case of *Bank* v. *Durfey*, which is the strongest case in the books for appellees, and there is no support for the rule announced.    In that case the doctrine that the right of the creditors to have the partnership funds applied to firm debts is a derivative one, is main-

tained, and it is distinctly held that so long as the partnership is solvent that the individual members of the firm may waive their right in that respect. And the court goes further and holds that so long as there is a fund out of which the creditors may be paid, they have no right to object to the disposition of the fund; and the fact that not only was the partnership insolvent, but that the members of the firm were also insolvent, is emphasized strongly. And the reason given in support of the decision in the Durfey case is not only the insolvency of the firm, but also the insolvency of the members composing it. In the case at bar it is admitted that there was abundant property in sight belonging to the firm and Harmon together, out of which the debts of the firm might have been made in full. And further that this property remained in the possession of Harmon for nearly two years after this bill was filed.

*J. C. Wilson*, for appellees.

Looking through the thin forms by which the transaction is veiled, we find that an insolvent partner borrowed money from a bank, giving his sister-in-law as surety, as the bank knew. He paid the debt by giving the bank a check signed, as the bank knew, by him on the firm funds, leaving the partnership insolvent. In other words, the bank participated in the misapplication of Duke & Harman's deposit, left with it by the firm, arising out of the sale of its mercantile business, by accepting a check drawn on it in payment of the individual debt of the partner, Duke, to the bank. Such a proceeding is condemned by this court in the carefully considered case of *Eyrich* v. *Bank*, 67 Miss., 60, and *Armour* v. *Bank*, 69 Miss., 700.

It will be borne in mind that no decree has been rendered in Harman's favor, but only in favor of those creditors who joined with Harman in filing the bill to hold the bank as trustee of the firm funds. Even knowledge is not requisite where the bank itself obtained the money. If it has firm assets offset against an individual debt, it must restore them to the firm

creditors. Especially is this true in a case like this, where the loss of the firm funds will leave the partnership insolvent. *Minor* v. *Gaw*, 11 Smed. & M., 322; *Buck* v. *Mosely*, 24 Miss., 172; *Robinson* v. *Aldridge*, 34 Miss., 352; *Stegall* v. *Coney*, 49 Miss., 761; *Gaines* v. *Coney*, 51 Miss., 323; *Williams* v. *George*, 49 Miss., 779.

The old rule upon which this idea of ratification is based—to wit, that the right to have firm property applied first to the payment of firm debts was an equity of the partner, and not a property right—has not withstood the attack of latter day commercial progress and business civilization. Few courts, anywhere, to-day hold to that doctrine, and it is now recognized, not only as a rule of administration by courts, but as an equity right, a moral right and a legal right that firm creditors have to demand that the assets acquired in the conduct of the business, and for which they have extended credit, should first be applied to the liquidation of the indebtedness of that business. Note 29, L. R. A., 681; *Memoir* v. *Whitewell*, 11 Am. Rep., 683; *Phelps* v. *McNealy*, 27 Am. Rep., 378 and notes. And our own court has taken a long and just step toward the advanced rule in the case of *Bank* v. *Durfey*, 72 Miss., 796, and in that case it is expressly said that a ratification of both partners in giving the partnership assets to the payment of the individual debts of the partners can only be tolerated by the courts where the firm is a solvent and going concern. The Durfey case expressly overrules the older cases of *Schmidlapp* v. *Currie*, 55 Miss., 597, and *Klein* v. *Hanover National Bank*, 64 Miss., 141.

WHITFIELD, C. J., delivered the opinion of the court.

The conclusion reached by the chancellor is correct, and the opinion of the chancellor is so luminously clear that we direct it to be printed in full in the report of this case.

*Affirmed.*